PHILIP L. GUARINO, ESQ.
GUARINO & CO. LAW FIRM, LLC
Attorney I.D. # 027561982
26 Park Street, Suite 2057
Montclair, NJ 07042
973/509-4628
Fax: 973/528-0635
e-mail: guarinolaw@gmail.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA AND KAYVAN KAROON, individually and as representatives of a class comprised of New Jersey purchasers of Marriott Vacation Club International Time Shares,<br><br>            Plaintiffs,<br><br>            v.<br><br>MARRIOTT INTERNATIONAL, INC., d/b/a MARRIOTT VACATION CLUB INTERNATIONAL,<br><br>            Defendant. | **AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY**<br><br>Civil Action No. 17-CV-11735 |

Plaintiffs Lisa and Kayvan Karoon (collectively, "Karoon"), by way of complaint against Marriott International, Inc., d/b/a Marriott Vacation Club International ("Marriott"), alleges:

### PARTIES

1. Lisa and Kavan Karoon are husband and wife, and owners of Karoon Capital Management, Inc. ("Karoon Capital"), which had purchased a "time share" sold by Marriott pursuant to a deed dated August 15, 2002. The time share was later transferred by Karoon

1

Capital to Lisa Karoon on August 10, 2011 pursuant to a deed that was recorded in Orange County, Florida. Plaintiffs are residents of Bergen County, New Jersey.

2. Karoon represents a class of New Jersey residents, described more fully infra, who purchased time shares from Marriott.

2. Marriot, d/b/a Marriott Vacation Club International is in the business of selling time shares in vacation properties. Its principal place of business is at Marriott Drive, Washington D.C. It actively solicits in New Jersey the purchase of time shares from New Jersey residents. According to its own statements (*See* Sales Brochure at 1, annexed as **Exhibit B**), Marriott "operations span all 50 states and 54 countries and territories across the world."

## BACKGROUND

3. In or about mid-2002, Marriott solicited Karoon to purchase a time share in Florida.

4. In connection with its solicitation efforts, a Marriott sales representative, Pasquale Natale ("Natale"), met with Karoon in or about June or July of 2002. They first met at a sales meeting, and then later in the day Natale met with Karoon at their Marriott hotel room. After a one-hour presentation, Natale provided Karoon with promotional material concerning its time share program, and made specific representations to Karoon as detailed in writing in the sales brochures and set forth below. Karoon relied upon Natale's representations, and Karoon and other New Jersey consumers relied upon brochures such as those provided to Karoon by Natale in purchasing vacation time shares.

5. In a Sales Brochure issued by Marriott, relevant portions of which are annexed as **Exhibit A to the Original Complaint**, Marriott president, J.W. Marriott, Jr., represented to

2

New Jersey consumers that "the name Marriott has stood for quality, service and an uncompromising commitment to excellence." *See* Sales Brochure (Introductory Page). He further represented that as a Marriott Vacation Club owner, a consumer would "become part of the largest system of quality ownership resorts in the world, offering your family access to a lifetime of extraordinary vacation opportutnities." *Id.* With resorts in Orlando, Florida, Palms Desert, California, Hawaii and elsewhere, consumers were promised that they would "discover a whole new way to see the world" with a "level of quality you won't find anywhere else." *Id.* In short, Marriott promised that "[t]imesharing isn't what it used to be." *Id.* at 1.

      6. Marriott represented to New Jersey consumers that what "made the difference" with its time shares was "a high quality product, excellent management, **and the most flexible vacation program in the industry**." *Id.* (emphasis added). Marriott further represented that consumers could own an interest "in a luxury vacation villa in a premier location" and purchase "only the time you need without tying up an enormous amount of money," while being "free from the typical worries of second-home ownership." *Id.* At the same time, Marriott promised that consumers would "have the exciting option of exchanging or trading your vacation villa for other destinations worldwide." *Id.*

      7. Marriott expressly represented to New Jersey consumers that their vacation time would be flexible: "You purchase within a seasonal time period; so instead of being locked into the same week, year after year, **you have the option of choosing the week that best suits your vacation schedule each year within that season**." *Id.* (emphasis added). Marriott promised that the time share would become "your home away from home for many years to come," and that consumers could "return each year." *Id.* at 3.

3

8. Marriott represented that "[p]purchasing an interest in a Marriott Vacation Club resort does not limit you to vacationing at your home resort each year. As a matter of fact, it opens up a whole world of opportunities and provides you with the ultimate in vacation flexibility." *Id.* at 4.

9. Marriott expressly represented that "[y]ou can use your week(s) to exchange to other ownership resorts, trade for Marriott Rewards points, rent, sell, or will to your heirs. It's your vacation week." *Id.* at 1. "[Y]ou are eligible to trade your week(s) for Marriott Rewards points which are redeemable towards many exciting vacation and travel options. In addition, Marriott's affiliation with Interval International provides exchange opportunities to over 1,600 villa resorts in 65 countries around the globe"! *Id.*

10. Marriott expressly represented that consumers could "trade your week with priority for fabulous vacations in other Marriott Vacation Club resorts," and that "[a]s an owner you receive priority in exchange reservations within the Marriott Vacation Club International network." *Id.*

11. Marriott expressly represented that a time share owner would "Occupy your home resort within the season you own," that an owner would "Exchange to other Marriott vacation club resorts with special exchange priority," and that there would be "Unlimited flexibility" at "over 1,600 resorts in over 65 countries" and "access to exclusive 5-star resorts." *Id.* at 11.

12. In a another Sales Brochure issued by Marriott, relevant portions of which are annexed as **Exhibit B to the Original Complaint**, Marriott president J.W. Marriott, Jr. represented to New Jersey consumers that Marriott strives "to provide the highest quality diversified products and services possible." *Id.* at 1. It supposedly "dedicates itself to

4

exceptional customer satisfaction every day and in every way." *Id.* Consumers were invited to "own" their vacations—"to enjoy year after year." *Id.* at 2. The Marriott time share program was offered "in a continuing quest to give you high-quality, exceptional value in everything we do." *Id.*

13. Marriott represented that "Vacation Ownership guarantees you a piece of paradise all your own. And you can decide which kind of paradise it will be." *Id.* at 3. Marriott represented that "you are never 'locked in' to a single time or place where you must go (unless, of course, that's just what you want). Instead, you can take advantage of a variety of exciting program options—and remarkable flexibility—to visit new destinations, and enjoy a wealth of first-class amenities ... Year after year." *Id.*

14. Marriott represented that it was offering "a uniquely customized ownership program ... [with] an ever-expanding list of benefits and options." *Id.* In short, Marriott promised that "it's easy to see how satisfying a lifetime of vacations with Marriott can be." *Id.* at 22.

15. Based upon the promises and misrepresentations of Natale and those of Marriott as set forth in the Sales Brochures, on Oct 31st 2002, Karoon Capital bought a "Gold Plan" timeshare and Marriott issued a deed, annexed as **Exhibit C to the Original Complaint**. Karron Capital later transferred the timeshare to Lisa Karoon on August 10, 2011, pursuant to a deed that was recorded in Orange County, Florida. Karoon Capital was to have the right to its time share vacation home for a week between weeks 1 through 38, as well as week 51 (the week before Christmas). Harbor Lake (formerly known as Horizons by Marriott) in Orlando, Florida, was to be the home base.

16. Karoon capital paid in excess of $14,000 for its time share unit.

5

17. Marriott had represented that Karoon could occupy the home base each year for a week within the allotted time period, or else could exchange the week for a week at any other property in the Marriott resort portfolio (even European resorts). If not satisfied with the offerings, Karoon was to be able to exchange the week with either an international time-share swap through "Interval International" ("Interval") or through 6 Marriot Hotels certificates (a day was lost if Karoon chose certificates).

18. Within the last few years it has become extremely difficult to exchange the week in Orlando, Florida with a week at another Marriott resort, and it is now apparent that an exchange is by no means guaranteed, in that the week now must be reserved many years in advance. Hence, Karoon was forced to either use Interval or exchange the week for certificates. To utilize Interval (an outside company), however, one generally must reserve at least 6 to 18 months in advance (depending on location) or else there systematically is no availability.

19. Karoon no longer even has the option of utilizing certificates, as Marriott suddenly terminated the certificate program several years ago.

20. Hence, it is now virtually impossible to utilize Interval within six months of deciding to take a vacation, and there no longer are any certificates to be utilized. Moreover, as concerns the home base, that also is now virtually impossible to reserve. Certainly there is no guaranty—contrary to what Marriott represented—that a time share owner will be able to stay at the home base at least once per year.

21. Within the last month, Karoon called Marriott and reserved the home base from July 14 through 21, 2017, and Karoon was given Confirmation number 84065054. Karoon was advised to call Marriottt Vacation club to arrange to have points utilized to pay for the

week. When Karoon called, Karoon was advised (by a Desk Manager named Ms. Ylish) that there was no "inventory" for owners and that the week only was available for purchase.

21. Karoon advised Marriot Vacation Club that there is a deed and that Karoon is entitled to occupy the time share any week from week 1 through week 38 of any calendar year, and that owners are to be given priority. Karoon was advised that there was no availability until 2018.

22. Karoon was denied the ability to vacation in the home base in 2017, even though a $1,300 annual maintenance fee is paid every year in addition to the over $14,000 that was initially paid to purchase the time share unit.

## CLASS ALLEGATIONS

23. Plaintiffs bring this suit individually and as a class action on behalf of others similarly situated pursuant to New Jersey Court Rule 4:32. Subject to additional information obtained through further investigation and/or discovery, the definition of the Class may be expanded or narrowed.

24. The proposed Class consists of all New Jersey residents or entities who at any point purchased a vacation time share from Marriott.

25. This action has been brought and may properly be maintained as a class action pursuant to New Jersey Court Rule 4:32, because plaintiffs' claims are typical of those of the Class members, as all are based upon the same facts and legal theories.

26. The Class has a well-defined community interest in the litigation:

**Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. The Class is believed to be comprised of New Jersey persons or entities who purchased time share units from Marriott throughout the United States since the inception of Marriott Vacation Club International. The identities of all class members are readily ascertainable from Marriott records, and are estimated to total many thousands of persons or entities.

**Commonality:** Common question of law and fact exist as to all members of the Class. These common questions predominate over questions affecting only individual Class members, and include:

a. Whether Marriott misrepresented to New Jersey consumers that the time share program that they paid for truly offered them a flexible vacation program.

b. Whether Marriott misrepresented to New Jersey consumers that they would have the option of exchanging or trading their vacation villa for other destinations worldwide.

c. Whether Marriott misrepresented to New Jersey consumers that they had the option of choosing the week that best suits their vacation schedule each year within the period allotted to them.

d. Whether Marriott misrepresented to New Jersey consumers that purchasing an interest in a Marriott Vacation Club resort opens up a whole world of opportunities and provides them with the ultimate in vacation flexibility.

e. Whether Marriott misrepresented to New Jersey consumers that they can use their week(s) to exchange and go to other ownership resorts, and that it's "their vacation week."

f. Whether Marriott misrepresented to New Jersey consumers that they can trade their week with priority for vacations in other Marriott Vacation Club resorts, and that as owners they receive priority in exchange reservations within the Marriott Vacation Club International network.

g. Whether Marriott misrepresented to New Jersey consumers that as time share owners they would occupy their home resort each year within the period allotted to them, and that that an owner/consumer could exchange and go to other Marriott vacation club resorts with special exchange priority.

h. Whether Marriott misrepresented to New Jersey consumers that they are never "locked in" to a single time or place where they must go, unless that is what they want.

i. Whether Marriott misrepresented to New Jersey consumers that they can take advantage of "a variety of program options—and remarkable flexibility—to visit new destinations, and enjoy a wealth of first-class amenities … Year after year."

J. Whether Marriott misrepresented to New Jersey consumers that it was offering "a uniquely customized ownership program … [with] an ever-expanding list of benefits and options."

**Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have claims arising out of defendant's common uniform course of conduct complained of herein.

**Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class members insofar as plaintiffs have no interests that are adverse to the absent Class members. Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have retained counsel experienced in litigating complex legal issues, including New Jersey Consumer Fraud Act cases, fraud and misrepresentation cases, and class actions. Neither plaintiffs nor their counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

**Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

27. Based upon discovery and further investigation, plaintiffs may move for class certification using modified definitions of the Class, Class Claims, and the Class Period, or seek class certification only as to particular issues.

## COUNT ONE
## (FRAUDULENT MISREPRESENTATIONS)

28. Plaintiffs incorporate the previous allegations as if fully set forth herein.

29. The representations made to Karoon and other New Jersey consumers by Marriott were knowingly false.

30. Contrary to Marriott's representations, it has recently become apparent that the Marriott time share program is not flexible; does not assure owners that they will be able to vacation each year in their home base or elsewhere; does not give owners a true option of exchanging or trading their vacation villa for other destinations worldwide; does not give consumers the true option of choosing the week that best suits their vacation schedule each year within their season; does not truly permit owners to use their week(s) to exchange to other ownership resorts; does not permit owners to trade their week with priority for vacations in other Marriott Vacation Club resorts and to receive priority in exchange reservations within the Marriott Vacation Club International network; does not permit owners

to occupy their home resort within the season they own, or to exchange to other Marriott vacation club resorts with special exchange priority; does not allow consumers to take advantage of "a variety of program options—and remarkable flexibility—to visit new destinations, and enjoy a wealth of first-class amenities … Year after year"; and does not offer "a uniquely customized ownership program … [with] an ever-expanding list of benefits and options."

31. Marriott knew and knows that its representations to consumers were false. Marriott never intended to abide by its representations. Indeed, Marriott recently has been made aware of the falsity of its representations by Karoon, yet Marriott deliberately has done nothing to rectify the situation—evidencing its intent to engage in misrepresenations.

32. Karoon and other consumers reasonably relied upon the representations made by Marriott in its brochures (**Exhibits A and B to the Original Complaint**).

33. Marriott intended that consumers rely upon its false representations and promises, so that Marriott could profit by selling time share units. Indeed, it appears that Marriott has sold more time share units than it actually has properties available with which to provide vacations to time share owners within their allotted periods. It it also apparant that Marriott does not, contrary to its representations, give priority to owners.

34. As a result of Marriott's misrepresentations, Karoon and other New Jersey consumers have been damaged. They paid many thousands of dollars to purchase time share units, and pay thousands of dollars each year in maintenance fees. Yet, Karoon and the other New Jersey consumers receive virtually no benefit in exchange, contrary to Marriott's representations. They are not guaranteed a week each year in their home base; the certificate program has been terminated; and it is virtually impossible to exchange the week for a

10

vacation at another location without reserving at least several months or more in advance. In short, consumers have been deprived of the benefit of their bargain.

## COUNT TWO
## (NEGLIGENT MISREPRESENTATIONS)

35. Plaintiffs incorporate the previous allegations as if fully set forth herein.

36. Marriott's misrepresentations, as detailed *supra*, were negligently or recklessly made.

37. Karoon and New Jersey consumers, to whom Marriott owed a duty to act with care, were damaged by the negligence and recklessness of Marriott.

38. It was foreseeable by Marriott that Karoon and New Jersey consumers would be injured by its misrepresentations.

39. Karoon and New Jersey consumers have suffered damage as a result of Marriott's negligent misrepresentations.

## COUNT THREE
## (VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT)

40. Plaintiffs incorporate the previous allegations as if fully set forth herein.

41. By selling time share units, Marriott engaged in a "sale" as that term is defined by NJSA 56:8-1(e).

42. Plaintiffs and members of the Class are a "person" as that term is defined by NJSA 56:8-1(d).

43. An "unlawful practice" is defined by NJSA 56:8-2 as the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in

11

connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."

44. Marriott engaged in unlawful practices, in that, *inter alia*, it recently has become apparent that Marriott falsely represented and knowingly concealed, suppressed and/or omitted to inform plaintiffs and the Class members of material facts concerning the purchase of their time shares in that, contrary to Marriott's many representations, the Marriott time share program is not flexible; does not assure owners that they will be able to vacation each year in their home base or anywhere else; does not give owners a true option of exchanging or trading their vacation villa for other destinations worldwide; does not give consumers the true option of choosing the week that best suits their vacation schedule each year within their season; does not truly permit owners to use their week(s) to exchange to other ownership resorts; does not permit owners to trade their week with priority for vacations in other Marriott Vacation Club resorts and to receive priority in exchange reservations within the Marriott Vacation Club International network; does not permit owners to occupy their home resort within the season they own, or to exchange to other Marriott vacation club resorts with special exchange priority; does not allow consumers to take advantage of "a variety of program options—and remarkable flexibility—to visit new destinations, and enjoy a wealth of first-class amenities … Year after year"; and does not offer "a uniquely customized ownership program … [with] an ever-expanding list of benefits and options."

45. Pursuant to NJSA 56:8-2.11 and 2.12, as well as NJSA 56:8-19, Marriott is liable to Karoon and the Class members for treble the amount of all monies paid Marriott throughout the course of the time share relationship, as said monies were acquired through

12

Marriott's unlawful practices. Pursuant to NJSA 56:8-19 Marriott also is liable for reasonable attorneys' fees, filing fees and costs.

## COUNT FOUR
### (BREACH OF CONTRACT)

46. Plaintiffs incorporate the previous allegations as if fully set forth herein.

47. In not assuring that Karoon and other Class members can use their home bases each year during the period afforded them; in not assuring that they can exchange the week in at their home base for a week at another location each year, if they so choose; in not affording owners reservation priority; and in terminating the certificate program, Marriott breached the contract that it entered into with them.

**WHEREFORE**, plaintiffs demand judgment against Marriott as follows:

**COUNT ONE:** For compensatory damages, punitive damages, cost of suit, and pre- and post-judgment interest.

**COUNT TWO:** For compensatory damages, cost of suit, and pre- and post-judgment interest.

**COUNT THREE:** For treble damages pursuant to NJSA 56:8-19, and for an award of reasonable attorneys' fees, filing fees and costs pursuant to NJSA 56:8-19, plus pre- and post-judgment interest.

**COUNT FOUR:** For compensatory damages, cost of suit, and pre- and post-judgment interest.

**GUARINO & CO. LAW FIRM, LLC**
*Attorneys for Plaintiffs*

BY: _____
Philip L. Guarino

26 Park Street, Suite 2057
Montclair, NJ 07042
Telephone: 973/509-4628
Fax: 973/528-0635
E-Mail: guarinolaw@gmail.com

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

**GUARINO & CO. LAW FIRM, LLC**
*Attorneys for Plaintiffs*

BY: _____
Philip L. Guarino

26 Park Street, Suite 2057
Montclair, NJ 07042
Telephone: 973/509-4628
Fax: 973/528-0635
E-Mail: guarinolaw@gmail.com

## CERTIFICATION

The undersigned certifies that, to the best of his knowledge:

1. The matter in controversy is not the subject of any other action or proceeding in any Court, or of a pending arbitration proceeding.

2. No other action or arbitration proceeding is contemplated concerning the matter in controversy.

3. There are no other parties who should be joined in this action.

GUARINO & CO. LAW FIRM, LLC
*Attorneys for Plaintiffs*

BY: _____
Philip L. Guarino

26 Park Street, Suite 2057
Montclair, NJ 07042
Telephone: 973/509-4628
Fax: 973/528-0635
E-Mail: guarinolaw@gmail.com
